TRUSTEES OF METHODIST EPISCOPAL CHURCH AND SOCIETY IN
CUTCHOGUE v. REEVE et al.

(Supreme Court, Appellate Division, Second Department. January 23, 1903.)

1. EXECUTORS AND ADMINISTRATORS—ASSETS—RIGHTS OF LEGATEES.
    Where a will bequeathed a legacy to plaintiff, payable at the death
    of testator's widow, who became executrix, and who received as assets
    of the estate a sufficient sum to pay the legacy, and on her death her
    administrator paid to defendant as the widow's next of kin a sum more
    than sufficient to pay the legacy so bequeathed, plaintiff was entitled
    to follow such assets into defendant's hands, and recover the legacy, both
    under Code Civ. Proc. § 1837, authorizing an action against an intestate's
    next of kin to recover, to the extent of the assets paid or distributed to
    them, for a debt of the decedent on which an action might have been
    maintained against the executor or administrator, and independent
    thereof.

Appeal from trial term, Suffolk county.

Action by the trustees of the Methodist Episcopal Church and So-
ciety in Cutchogue against Charlotte M. Reeve and others. From
a judgment in favor of plaintiff, defendant Reeve appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOOD-
WARD, HIRSCHBERG, and JENKS, JJ.

Ernest W. Tooker, for appellant.
George F. Stackpole, for respondents.

GOODRICH, P. J. The decision upon which was entered the
judgment appealed from directed Charlotte M. Reeve, one of the de-
fendants, to pay a proportionate share of a legacy under the will of
David R. Terry. There is no certificate that the record contains all
the evidence, and consequently we must assume that there was suf-
ficient evidence to justify the findings of fact, which, briefly stated,
are as follows: David R. Terry died in January, 1860, leaving a will
which was duly admitted to probate. In February, 1860, letters testa-
mentary were issued to his widow, Mary A. Terry, as sole executrix.
The testator, by his will, gave a legacy of $100 to the plaintiffs, payable
at the death of the widow, or within one year thereafter. He left
property that came into the hands of the widow, sufficient to pay the
legacy. She died intestate in April, 1899, and letters of administra-
tion were issued on her estate. The accounts of the administrator
were settled by a decree of the surrogate in December, 1900, by which
it appears that the administrator paid to Charlotte M. Reeve, as credit-
or, the sum of $1,246, and to her as heir at law the further sum of
$221.83, and certain sums to the other defendants, as heirs at law or
next of kin. These amounts are not essential, as the parties have not
appealed.

This appeal raises the question whether 'the plaintiffs, as, legatees
under the will of David, can follow the assets of his estate into the
hands of persons who have received it in the distribution of the estate
of Mary, his widow and executrix. The appellant, Mrs. Reeve, con-
tends that the action was improperly brought under section 1837 of
the Code of Civil Procedure, as that section relates only to an action
by a creditor against the next of kin, and not to an action by a legatee.

It is to be observed, however, that the plaintiffs have not brought the action against the next of kin of David, but against the next of kin of Mary. She came into possession of assets of David as his executrix, and, if she had not properly administered the estate, she would have been indebted to the estate, and liable to an action by a creditor. This being true, the liability was her debt; and the section distinctly authorizes an action against "the next of kin of an intestate * * * to recover, to the extent of the assets paid or distributed to them, for a debt of the decedent, upon which an action might have been maintained against the executor or administrator." But even if this action was not within the precise wording of the section, it was maintainable irrespective of statute. In 2 Rop. Leg. 439, it is said, "That a legatee, whether general, specific or residuary, is entitled to follow the assets, appears to be now settled." The author cites in his note, as authority, Hill v. Simpson, 7 Ves. 152, and McLeod v. Drummond, 17 Ves. 169, where the principle is announced. The judgment should be affirmed.

Judgment affirmed, with costs. All concur; BARTLETT, J., in result.

(77 App. Div. 469.)
### FASY et ux. v. INTERNATIONAL NAV. CO.

(Supreme Court, Appellate Division, First Department. December 19, 1902.)

1. CARRIERS—BILL OF LADING—EVIDENCE OF DELIVERY.
   A bill of lading acknowledging the receipt of a trunk was evidence of its delivery to the carrier.
2. SAME—LOSS OF GOODS—BURDEN OF PROOF.
   Where a carrier, instead of delivering a trunk at the port as required by its contract, without giving the owner an opportunity to examine or take charge of it for the purpose of entry, sent it to the customhouse, and, after entry and release, forwarded it by an express company to the owner's address, it had the burden of showing that a loss therefrom did not occur while it was in its actual custody.
3. SAME—NEGLIGENCE—LIMITATION OF LIABILITY.
   A condition in a bill of lading limiting liability did not exempt the carrier from liability for negligence.

   Patterson and McLaughlin, JJ., dissenting.

Appeal from trial term, New York county.

Action by Alfred Fasy and wife against the International Navigation Company. From a judgment for plaintiffs and order denying motion for new trial, defendant appeals. Affirmed.

The following is the opinion of the court below (NASH, J.):

The defendant's bill of lading acknowledging the receipt of the trunk is evidence of the fact that it was delivered to the defendant's agent at Basle. By its terms the defendant agreed to deliver the trunk of effects in good order and condition at the port of New York with "the International Navigation Company of New York, for disposal of Dr. Wells," Richmond Hill, Long Island. The defendant was not required by its contract to deliver the trunk to Dr. Wells at Richmond Hill. It could have relieved itself of liability by the delivery of the trunk of effects to the consignee in New York in good order and condition, and upon tendering such delivery the question as to good order and condition, if raised by the plaintiffs, would

¶ 3. See Carriers, vol. 9, Cent. Dig. §§ 654, 699.